TERESA C. CHOW (SBN 237694)
*tchow@bakerlaw.com*
ALEXANDER VITRUK (SBN 315756)
*avitruk@bakerlaw.com*
**BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA  90025-0509
Telephone:  310.820.8800
Facsimile:   310.820.8859

*Attorneys for Defendant*
SHARP HEALTHCARE

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

LINDA CAMUS and DEANNA
FRANKLIN-PITTMAN, on behalf of
themselves and all others similarly
situated,

Plaintiff,

v.

SHARP HEALTHCARE,

Defendant.

Case No.:  **'23 CV 0033 W    BLM**

[San Diego County Superior Court
Case No.:37-2022-00048546-CU-NP-
CTL]

**DEFENDANT'S NOTICE OF
REMOVAL**

Action Filed:          12/02/2022
Action Removed:     01/06/2023

## NOTICE OF REMOVAL

Over the past two decades, the federal government has engaged in an extensive effort to build a nationwide health information technology infrastructure. This case challenges the legitimacy of actions Defendant Sharp HealthCare ("Sharp") has taken in connection with pursuing that directive. Sharp therefore removes this case pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1).

In like circumstances, as explained *infra* at pp. 8-9, district courts have allowed removal under the federal officer removal statute. *See Doe I v. UPMC*, No. 2:20-cv-359, 2020 WL 4381675, at *6 (W.D. Pa. July 31, 2020); *see also Doe v. ProMedica*

1

*Health Sys., Inc.*, No. 3:20 CV 1581, 2020 WL 7705627, at **2-3 (N.D. Ohio Oct. 30, 2020). In support of removal, Sharp provides the following "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a):

## NATURE OF THE CASE

1.     Sharp is a California non-profit public benefit corporation with its principal place of business at 8695 Spectrum Center Blvd. San Diego, CA 92123.

2.     On December 2, 2022, Plaintiffs Linda Camus and DeAnna Franklin-Pittman filed a complaint against Sharp, in the Superior Court of the State of California for the County of San Diego, Case No. 37-2022-00048546-CU-NP-CTL.

3.     Plaintiffs' four-count Complaint purports to challenge Sharp's routine on-line practices as various invasions of privacy, including alleged breach of fiduciary duty, violations of the California Invasion of Privacy Act, Cal. Penal Code § 631, common law invasion of privacy, California's Constitutional right to privacy, and Confidentiality of Medical Information Act § 56.10. *See generally* Complaint.

4.     Sharp operates a website, www.sharp.com, that among other things, provides information to the public about Sharp and allows patients to access their medical records through a Sharp patient portal.

5.     Plaintiff Camus alleges "[o]n numerous occasions from 2012 to 2022, [she] accessed www.sharp.com … and used the website to look for providers." Compl. ¶ 11. Plaintiff Franklin-Pittman alleges "[o]n numerous occasions from 2016 to 2022, [she] accessed www.sharp.com … and used the website to look for providers." *Id.* ¶ 12.

6.     Plaintiffs allege that, the Facebook Pixel, offered by Facebook,[1] allegedly used on the Sharp website, "tracks the people and type of actions they take." Compl. ¶ 29. Plaintiffs also allege, "Facebook Pixel, via cookies and embedded code, silently instructs the user's browser to duplicate and transmit the user's communications with www.sharp.com, sending the corresponding data to

_____

[1] Facebook rebranded itself as Meta in 2021.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Facebook's servers, alongside additional information that transcribes the communication's content and the individual's identity." *Id.* ¶ 30. "

7.    Plaintiffs further allege that "[t]hrough the Facebook Pixel, Sharp shares its patients' identities and online activity including information and search results related to their private medical treatment." Compl. ¶ 32.

8.    Plaintiffs do not assert that Sharp discloses names, social security numbers, diagnoses, birth dates, or comparable information to the third parties.

## BASIS FOR REMOVAL

9.    Sharp removes this case pursuant to the federal officer removal statute. 28 U.S.C. § 1442(a). That statute permits removal when the defendant is "the United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency therefore, in an office or individual capacity, for or relating to any act under color of such office …" *Id*. § 1442(a)(1).

10.    The United States Supreme Court has directed that the federal officer removal statute is to be broadly construed, and that defendants may remove under this statute when they are acting under color of federal office. *Colorado v. Symes*, 286 U.S. 510, 517 (1932); *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981). To do so, a defendant must show that (a) it is a "person" within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a "colorable federal defense." *Riggs v. Airbus Helicopters, Inc*., 939 F.3d 981, 986–87 (9th Cir. 2019) (quoting *Fidelitad, Inc. v. Insitu, Inc*., 904 F.3d 1095, 1099 (9th Cir. 2018)).

11.    Since at least 2004, the federal government – through executive order, legislation, and regulatory and sub-regulatory action – has directed and overseen a public-private initiative to develop a nationwide infrastructure for health information technology. It has incentivized and directed providers who participate in the Medicare and Medicaid programs (like Sharp) to offer patients online access to their medical records, and to optimize patient engagement with their medical information.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT'S NOTICE OF REMOVAL

The federal government has also modeled the behavior it wants to see; it has created a portal for Medicare beneficiaries and worked with the same third-party services, with the same "source code," at issue in this case.

12.    Sharp has dutifully assisted and followed the federal government's direction in this effort. In so doing, it has acted within the penumbra of federal action and office. Given this, and the Supreme Court's directive that the federal officer removal statute must be broadly construed, and because this suit implicates this federally-directed conduct, the requirements of the federal removal statute are satisfied.

### *The Meaningful Use Program*

13.    In 2004, President Bush issued an Executive Order that established a National Health Information Technology Coordinator (ONC). *See* Exec. Order 13335 (Apr. 27, 2004). The purpose of the Order was to spark a "nationwide implementation of interoperable health information technology in both the public and private health care sectors." *Id*.

14.    Five years later, Congress codified the office in the Health Information Technology for Economic and Clinical Health Act of 2009. 123 Stat. 115, 247 (2009). At that time, Congress allocated billions of dollars to CMS to "invest in the infrastructure necessary to allow for and promote the electronic exchange and use of health information for each individual in the United States consistent with the goals outlined in the strategic plan developed by the [ONC]." *Id*.

15.    Consistent with its mandate, the ONC has published guidance for private providers to follow, including through five-year strategic plans. In the 2015-2020 plan, it dictated that "federal agencies" were to "collaborate with . . . private stakeholders to . . . build a culture of electronic health information access and use." ONC, *Federal Health Information Technology Strategic Plan 2015-2020*, available at https://www.healthit.gov/sites/default/files/9-5-federalhealthitstratplanfinal_0.pdf (emphasis added).    And, in the 2020-2025 plan, it noted that this has already

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT'S NOTICE OF REMOVAL

happened, saying: "Federal, state, and local governments, along with the private sector, have worked together to help digitize health information and healthcare." ONC, *Federal Health Information Technology Strategic Plan 2020-2025* available at https://www.healthit.gov/sites/default/files/page/2020-10/Federal%20Health%20IT%20Strategic%20Plan_2020_2025.pdf ("2020-2025 Strategic Plan").

16.     One critical aspect of this strategy is CMS' "Meaningful Use" program. 42 C.F.R. § 495.2-495.370. As the name implies, the program aims to increase patient's "meaningful use" and engagement with electronic health records through the creation of patient portals.

17.     Under this program, providers must meet certain criteria to receive full Medicare reimbursement, one of which is having an interoperable patient portal. Regulations provided for incentive payments of up to two percent for providers that reached certain levels of engagement with electronic health record use through the patient portal.

18.     To achieve those specifications, CMS recommends that providers create patient "portals" that allow users to communicate directly with their providers and immediately access (or transfer) their medical records.

The ONC has specified how providers can optimize such portals, explaining that they "must be engaging and user-friendly." ONC has also specified "how a patient portal helps achieve meaningful use requirements," and how a provider can "actively promote and facilitate portal use." ONC, *How to Optimize Patient Portals for Patient Engagement and Meet Meaningful Use Requirements* (2013) available at https://www.healthit.gov/sites/default/files/nlc_how_to_optimizepatientportals_for_patientengagement.pdf.

19.     In addition to this guidance, CMS has created its own portal, offering what is essentially a model for private providers to follow. To optimize individual engagement with the portal, CMS relies on third-party marketers, like Google and

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Facebook. By working with over two dozen third-party servicers, CMS is able to provide users with the information most relevant to them. *See generally* Medicare.gov, Privacy Policy (explaining that website "users' activity on third-party websites that Medicare.gov links to (like Facebook or Twitter) is governed by the security and privacy policies of those websites," and that any information users "provide to register on Facebook is voluntarily contributed and isn't maintained by" CMS).

### Sharp Is A "Person"

20.    By the plain terms of the statute, removal is permitted by "any person acting under that officer." 42 U.S.C. § 1442(a)(1).

21.    While the statute is silent as to the definition of a "person", organizations, corporate defendants, and government entities have routinely removed under this provision and been deemed a "person" under the statute. *See, e.g., Arness v. Boeing N. Am., Inc.,* 997 F. Supp. 1268, 1272 (C.D. Cal. 1998); *Fung v. Abex Corp.*, 816 F. Supp. 569, 572 (N.D. Cal. 1992); *Overly v. Raybestos-Manhattan*, No. C-96-2853-SI, 1996 U.S. Dist. LEXIS 13535, at *7 (N.D. Cal. Sept. 6, 1996); *Malek v. Blackmer Pump Co*., No. CV 15-04454 SJO (JEMx), 2015 U.S. Dist. LEXIS 97755, at *5 (C.D. Cal. July 24, 2015).

22.    Sharp is a California non-profit public benefit corporation and since the federal officer statute is to be broadly construed, Sharp qualifies as a person under that statute.

### There is a Causal Nexus Between Sharp's Actions and Plaintiffs' Claims

23.    To demonstrate a causal nexus, the private person must show: (1) that the person was "acting under" a federal officer in performing some "act under color of federal office," and (2) that such action is causally connected with the plaintiff's claims against it. See *Goncalves ex rel. Goncalves v. Rady Child.'s Hosp. San Diego*, 865 F.3d 1237, 1244–50 (9th Cir. 2017). The federal officer removal statute should be "liberally construed" to fulfill its purpose of allowing federal officials and agents

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT'S NOTICE OF REMOVAL

who are being prosecuted in state court for acts taken in their federal authority to remove the case to federal court. *Watson v. Philip Morris Cos*., 551 U.S. 142, 147–49, 127 S.Ct. 2301, 168 L.Ed.2d 42 (2007).

### *Sharp is Acting Under a Federal Officer*

24.    This element focuses on the relationship between the federal government and the private entity.  It asks whether the entity is engaged in "an effort to *assist*, or to *help carry out*, the duties or tasks of the federal superior," and whether the relationship between the government and private entity involves "detailed regulation, monitoring, or supervision." *Goncalves*, 865 F.3d at 1245 (citing to *Watson*, 551 U.S. at 152) (emphasis added).

25.    Here these fundamental and liberally construed requirements are easily met. The federal government is incentivizing, regulating, monitoring and supervising Sharp's actions in the Meaningful Use program in order to meet the federal government's national priority of interoperable health information technology.

26.    First, Sharp (along with numerous other healthcare entities) is helping the government produce the nationwide, interoperable information technology infrastructure for health information. The federal government itself has repeatedly acknowledged the private sector's essential role in the project, most recently stating that "[f]ederal, state, and local governments, along with the private sector have worked together to help digitize health information and healthcare." *See* 2020-2025 Strategic Plan.

27.    Second, in the absence of Sharp's actions (and the work of comparable medical providers throughout the country), the federal government would be left alone to complete its mission. As its efforts to digitize information and increase patient engagement with Medicare beneficiaries underscore, it would likely attempt to do exactly that.

28.    Third, the government has specified how to best enhance patient engagement, including through a patient portal. It has clarified how to generally

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

design the portals, and has told entities how best to market their on-line resources. Furthermore, through its own engagement with third-party services, it has modeled the behavior that private entities are to follow.

29.     Finally, the government has created an office dedicated to this issue and has closely monitored the work of private entities (like Sharp). It has also supervised the general development of this information technology infrastructure. And, because Meaningful Use incentives are available only to entities participating in the Medicare and Medicaid programs, CMS substantially incentivizes Sharp and comparable organizations to not only maintain public websites and/or patient portals, but also to achieve meaningful use of them.

30.     In like circumstances, courts have liberally construed the "acting under" requirement, holding that defendant medical providers were "acting under" a federal officer while performing similar alleged conduct. *UPMC*, 2020 WL 4381675, at *6 (holding that the University of Pittsburgh Medical Center's participation in the Meaningful Use Program was sufficient to satisfy the "acting under" requirement necessary for the federal officer removal statute); *see also Doe v. ProMedica Health Sys., Inc.*, No. 3:20 CV 1581, 2020 WL 7705627, at **2-3 (N.D. Ohio Oct. 30, 2020) (same; "[b]ecause [ProMedica Health System's] participation assisted the federal government in achieving [the creation of a unified system of patient electronic health records], Defendant has satisfied the 'acting under' prong").

31.     In *UPMC*, as in this case, plaintiffs sought redress under state law for UPMC's alleged disclosure of Plaintiff's personally identifiable information to third parties for internet marketing purposes without their knowledge or authorization. *UPMC*, 2020 WL 4381675, at *1. The UPMC court was focused on both the portal and the public website as being ways of furthering the government's goal of increasing patient engagement with electronic health records. *See, e.g.*, "UPMC, as a participant in the Meaningful Use Program, receives incentive payments from DHHS for its development and use of the UPMC website and the MyUPMC portal in

accordance with the program's criteria." *Id*. at *6. The *UPMC* court also emphasized that "it is not necessary that the complained-of conduct be done at the specific behest of the federal superior," and "any dispute about whether the allegedly wrongful conduct was outside the scope the private entity's duties is the very thing that should be left to a federal court to decide." *Id*. at *7. A private entity "need only show that the allegations in the complaint are directed at the private entity's efforts to assist a federal superior." That low bar is clearly met here. Here, as in UPMC, "[t]here is plainly a connection or association between [the medical provider's alleged] website management and marketing strategies and the Meaningful Use program, particularly the incentives that are tied to patient participation and usability. Plaintiff's claims are therefore 'for or relating to' an act under color of federal office." *Id*.

### Plaintiffs' Claims Relate to the Actions Under Color of Federal Office

32.     Under Section 1442(a)(1), the conduct at issue in the case must also "have been undertaken for or relating to" the federal office. As the *UPMC* decision shows, this requirement is liberally construed and easily met here. *UPMC*, 2020 WL 4381675, at *12 ("There is plainly a connection or association between UPMC's website management and marketing strategies and the Meaningful Use program, particularly the incentives that are tied to patient participation and usability.").

33.     Plaintiffs' Complaint directly challenges Sharp's website analytics practices, which promote "meaningful use" by helping to drive patients to the Sharp website and to the Sharp patient portal.

34.     Plaintiffs' Complaint also generally targets Sharp's alleged tracking of online behaviors through source code and cookies, along with the use of marketing companies in conjunction with its public medical website. The Meaningful Use program envisions these activities, as manifested by the federal government's own use of these codes and third parties for its Medicare website.

35.      Indeed, as Plaintiffs themselves allege, the entire point of using the third-party services is to direct traffic to, and increase engagement with, Sharp's

website. For example, they allege that Facebook Pixel "tracks the people and type of actions they take." Compl. ¶ 29. Plaintiffs also allege, "Facebook Pixel, via cookies and embedded code, silently instructs the user's browser to duplicate and transmit the user's communications with www.sharp.com, sending the corresponding data to Facebook's servers, alongside additional information that transcribes the communication's content and the individual's identity." *Id.* ¶ 30.

36.     Plaintiffs further allege that "[t]hrough the Facebook Pixel, Sharp shares its patients' identities and online activity including information and search results related to their private medical treatment." Compl. ¶ 32.

### *Sharp Raises Colorable Federal Defenses to Plaintiffs' Claims*

37.     The final requirement for removal under this statute erects a low bar and merely requires that the defendant's assertion is both "defensive" and "based in federal law." *Mesa v. Cal.,* 489 U.S. 121, 129-30 (1989); *see also Bahrs v. Hughes Aircraft Co.,* 795 F. Supp. 965, 969 (D. Ariz. 1992) ("The question is not whether a defendant's claimed defense is meritorious, but only whether a colorable claim to such a defense has been made.")

38.     Defendant intends to assert several defenses, but by way of illustration and not limitation, there are at least two colorable federal defenses to the claims at issue here that satisfy this requirement.

39.     First, in response to Plaintiffs' repeated claims that "protected health information" was disclosed, Sharp will argue that the information purportedly disclosed (*i.e.*, IP addresses and other web metadata) is outside of the purview of protected health information as defined by the Health Insurance Portability and Accountability Act of 1996 (HIPAA). The Northern District of California has already made this holding in an analogous case against numerous health care providers challenging alleged disclosures on the Internet through routine website traffic. *See Smith v. Facebook*, 262 F. Supp. 3d 943, 954-55 (N.D. Cal. 2017). This defense turns

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

on an interpretation of federal law and on its own is sufficient to satisfy this element's low bar.

40.     Second, to the extent that they ever could create a viable cause of action under California law, Sharp will argue that federal law preempts Plaintiffs' state constitutional and/or state common-law claims relating to alleged invasion of privacy. *See generally*, Compl. ¶¶ 78 - 88.

41.     Because each of the requirements of the statute are satisfied, removal to this Court is proper.

## PROCEDURAL REQUIREMENTS FOR REMOVAL

42.     Sharp satisfies all of the procedural requirements under 28 U.S.C. § 1446.

43.     Sharp is filing this Notice of Removal within thirty (30) days of its receipt of the Complaint by "service," 28 U.S.C. § 1446.

44.     Sharp files this Notice in the United States District Court of the Southern District of California, because the State court in which the action is pending, the Superior Court of San Diego County, is within this federal judicial district. This Notice is signed pursuant to Federal Rules of Civil Procedure, Rule 11.

45.     Sharp has attached hereto a true and correct copy of Summons and Complaint, and other process, pleadings and orders, are attached hereto as Exhibits and identified in the Index of Exhibits listed below.

46.     Upon filing this notice, Sharp will promptly "give written notice thereof to all adverse parties," and will "file a copy of the notice with the clerk" of the State court.

47.     Pursuant to Federal Rule of Civil Procedure 7.1, Sharp is filing a Corporate Disclosure Statement concurrently with this Notice of Removal.

## CONCLUSION

As set forth above, Plaintiffs' Complaint directly challenges practices and procedures Sharp has taken acting under color of federal law in implementing federal

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

policy to nationalize the health information technology infrastructure. Plaintiffs' Complaint is therefore appropriately removable to this Court pursuant to 28 U.S.C. § 1442(a)(1).

Respectfully submitted,

Dated: January 6, 2023       **BAKER & HOSTETLER LLP**

By:    _/s/ Teresa C. Chow_
        TERESA C. CHOW

_Attorneys for Defendant_
SHARP HEALTHCARE

DEFENDANT'S NOTICE OF REMOVAL

# INDEX OF EXHIBITS

**Page No.**

**Exhibit A** (Summons) ............................................................. 14

**Exhibit B** (Class Action Complaint) ........................................ 15

**Exhibit C** (Civil Case Cover Sheet) ........................................ 45

**Exhibit D** (Notice of Case Assignment and
Case Management Conference-ROA #7) ................................... 47

**Exhibit E** (Notice of Case Assignment and
Case Management Conference-ROA #8) ................................... 49

**Exhibit F** (Notice of Appearance of John J. Nelson) ............... 51

**Exhibit G** (Proof of Service of Summons) ............................. 54

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT'S NOTICE OF REMOVAL

# EXHIBIT A

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego
**12/02/2022** at 05:32:33 PM
Clerk of the Superior Court
By Elizabeth Reyes,Deputy Clerk

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
Sharp Healthcare

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Linda Camus and Deanna Franklin-Pittman, on behalf of themselves and all others similarly situated

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

   You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

   There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

   *Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

   *Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* San Diego Superior Court

Hall of Justice, 300 West Broadway, San Diego, CA 92101

CASE NUMBER:
*(Número del Caso):* 37-2022-00048546-CU-NP-CTL

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Tina Wolfson (SBN 174806), AHDOOT & WOLFSON, PC, 2600 W. Olive Avenue, Suite 500, Burbank, CA 91505; Tel: (310) 474-9111

DATE: 12/05/2022
*(Fecha)*

Clerk, by _____ , Deputy
*(Secretario)*                            *(Adjunto)*

E. Reyes

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*
   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

**Page 1 of 1**

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

**For your protection and privacy, please press the Clear This Form button after you have printed the form.**

[ Print this form ]   [ Save this form ]   [ Clear this form ]

**EXHIBIT A**
**PAGE 14**

# EXHIBIT B

Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
Christopher E. Stiner (SBN 276033)
cstiner@ahdootwolfson.com
Deborah De Villa (SBN 312564)
ddevilla@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505
Telephone: (310) 474-9111
Facsimile:  (310) 474-8585

John J. Nelson (SBN 317598)
jnelson@milberg.com
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive
Beverly Hills, CA 90212
Telephone: (858) 209-6941

*Attorneys for Plaintiff and the Putative Class*

[Additional counsel appear on signature page]

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**12/02/2022** at 05:32:33 PM

Clerk of the Superior Court
By Elizabeth Reyes, Deputy Clerk

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF SAN DIEGO

| | |
|---|---|
| LINDA CAMUS and DEANNA FRANKLIN-PITTMAN, on behalf of themselves and all others similarly situated, | Case No.:  37-2022-00048548-CU-NP-CTL |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | JURY TRIAL DEMANDED |
| SHARP HEALTHCARE, | |
| Defendant. | |

CLASS ACTION COMPLAINT

1       Plaintiffs Linda Camus and Deanna Franklin-Pittman on behalf of themselves and all others
2   similarly situated (the "Class Members"), by and through their attorneys, make the following allegations
3   based on personal knowledge and the investigation of counsel, and on information and belief as to all
4   other allegations.

5   **NATURE OF THE ACTION**

6       1.    This is a data privacy class action suit brought on behalf of all California residents who
7   have accessed www.sharp.com, a website that Defendant owns and operates, and who had their
8   personally identifiable information and/or protected health information improperly disclosed to
9   Facebook as a result of using Defendant's website.

10       2.    Defendant aids, employs, agrees, and conspires with Facebook to intercept
11   communications sent and received by Plaintiffs and Class Members, including communications
12   containing protected medical information.

13       3.    Plaintiffs and Class Members used www.sharp.com to search and locate physicians,
14   schedule medical appointments, and find treatment options. Defendant encouraged its patients to use
15   additional web features—such as a general search—to enter targeted search queries regarding their
16   medical conditions and health care options.

17       4.    Unbeknownst to Plaintiffs and Class Members, and pursuant to the systematic process
18   described herein, patients' private and protected communications with www.sharp.com were
19   automatically transmitted and communicated to Facebook, alongside other information—including but
20   not limited to individual patients' IP addresses, physical locations, and unique and persistent Facebook
21   ID—as a result of Defendant's decision to install and use tracking pixels on its website.

22       5.    As a result of Defendant's unauthorized transmission of its patients' identities and online
23   activity, including information and search results related to their private medical treatment, to a third
24   party, Plaintiffs bring this action for legal and equitable remedies resulting from the violations of the
25   California Invasion of Privacy Act, the California Confidentiality of Medical Information Act, and for
26   the Invasion of Privacy under California's Constitution.

27

28

- 1 -

**JURISDICTION AND VENUE**

6.    The Court has personal jurisdiction over Defendant because Defendant resides in and does business in the State of California.

7.    This is a class action brought pursuant to Code of Civil Procedure section 382, and this Court has jurisdiction over Plaintiffs' claims because the amount in controversy exceeds this Court's jurisdictional minimum.

8.    Federal jurisdiction under the Class Action Fairness Action, 28 U.S.C. §1332(d), is lacking because the proposed class of plaintiffs is limited to citizens of the state of California.

9.    Venue is proper under Code of Civil Procedure sections 395(a) and 395.5 because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this county.

**THE PARTIES**

10.    Sharp HealthCare ("Sharp") is registered as a nonprofit regional health care group located in San Diego. Sharp includes four acute care hospitals—Sharp Memorial Hospital being the largest—as well as three specialty hospitals, three affiliated medical groups and a health plan. As the owner and operator of Sharp Memorial Hospital, among other medical centers and operations, Sharp offers a full range of medical services, including primary and outpatient care, and treats hundreds of thousands of patients each year.

11.    Plaintiff Linda Camus is an adult citizen of the state of California and is domiciled in San Diego, California. On numerous occasions from 2012 to 2022, Plaintiff Camus accessed www.sharp.com on her phone and computer, and used the website to look for providers. Plaintiff Camus has used and continues to use the same devices to maintain and access an active Facebook account throughout the relevant period in this case. Pursuant to the systematic process described herein, Sharp assisted Facebook with intercepting Plaintiff Camus's communications, including those that contained personally identifiable information, protected health information, and related confidential information. Sharp assisted these interceptions without Plaintiff Camus's knowledge, consent, or express written authorization. By failing to receive the requisite consent, Defendant breached confidentiality and

- 2 -

1   unlawfully disclosed Plaintiff Camus's personally identifiable information and protected health
2   information.

3       12.   Plaintiff Deanna Franklin-Pittman is an adult citizen of the state of California and is
4   domiciled in San Diego, California. On numerous occasions from 2016 to 2022, Plaintiff Franklin-
5   Pittman accessed www.sharp.com on her phone, computer, and tablet, and used the website to look for
6   providers and to book appointments. Plaintiff Franklin-Pittman has used and continues to use her phone
7   to maintain and access an active Facebook account throughout the relevant period in this case. Pursuant
8   to the systematic process described herein, Sharp assisted Facebook with intercepting Plaintiff Franklin-
9   Pittman's communications, including those that contained personally identifiable information, protected
10  health information, and related confidential information. Sharp assisted these interceptions without
11  Plaintiff Franklin-Pittman's knowledge, consent, or express written authorization. By failing to receive
12  the requisite consent, Defendant breached confidentiality and unlawfully disclosed Plaintiff Franklin-
13  Pittman's personally identifiable information and protected health information.

14                              **FACTUAL ALLEGATIONS**

15  **A.    Background of the California Information Privacy Act ("CIPA")**

16      13.   The CIPA, Cal. Penal Code §§ 630, *et seq.*, prohibits aiding or permitting another person
17  to willfully—and without the consent of all parties to a communication—read or learn the contents or
18  meaning of any message, report, or communication while the same is in transit or passing over any
19  wire, line, or cable, or is being sent from or received at any place within California.

20      14.   To establish liability under section 631(a), a plaintiff need only establish that the
21  defendant, "by means of any machine, instrument, contrivance, or in any other manner," does any of
22  the following:

23      •   Intentionally taps, or makes any unauthorized connection, whether physically,
24          electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire,
            line, cable, or instrument, including the wire, line, cable, or instrument of any internal
25          telephonic communication system; or

26      •   Willfully and without the consent of all parties to the communication, or in any
            unauthorized manner, reads or attempts to read or learn the contents or meaning of any
27          message, report, or communication while the same is in transit or passing over any wire,
            line or cable or is being sent from or received at any place within this state; or

28

- 3 -

**EXHIBIT B**
**PAGE 18**

- Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained; or

- Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

15.     Section 631(a) is not limited to phone lines, but also applies to "new technologies" such as computers, the Internet, and email. *See Matera v. Google Inc.*, No. 15-cv-4062-LHK, 2016 WL 8200619, at \*21 (N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *Bradley v. Google, Inc.*, No. 06-cv-5289-WHA, 2006 WL 3798134, at \*5-6 (N.D. Cal. Dec. 22, 2006) (CIPA governs "electronic communications"); *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020) (reversing dismissal of CIPA and common law privacy claims based on Facebook's collection of consumers' internet browsing history).

16.     Under California Penal Code section 637.2, Plaintiffs and Class Members may seek injunctive relief and statutory damages of $2,500 per violation.

**B.     Background of the California Confidentiality of Medical Information Act ("CMIA")**

17.     Pursuant to the California Confidentiality of Medical Information Act, Cal. Civ. Code §§ 56, *et seq.*, "A provider of health care . . . shall not disclose medical information regarding a patient of the provider of health care . . . without first obtaining an authorization, except as provided in subdivision (b) or (c)." Cal. Civ. Code § 56.10(a).[1] "An authorization for the release of medical information . . . shall be valid if it:

(a) Is handwritten by the person who signs it or is in a typeface no smaller than 14-point type.

(b) Is clearly separate from any other language present on the same page and is executed by a signature which serves no other purpose than to execute the authorization.

(c) Is signed and dated . . .

---

[1] Subdivisions (b) and (c) are not relevant to this case but permit the disclosure of medical information in situations where a government investigation or lawsuit is taking place. For example, Sharp could bypass the authorization requirement if patient medical information was requested pursuant to a lawful court order or by a party to a proceeding before a court or administrative agency pursuant to a subpoena. *See* Cal. Civ. Code §§ 56.10(b)(3), 56.10(b)(6).

- 4 -

1   (d) States the specific uses and limitations on the types of medical information to be
2   disclosed.

3   (e) States the name or functions of the provider of health care, health care service plan,
    pharmaceutical company, or contractor that may disclose the medical information.
4
5   (f) States the name or functions of the persons or entities authorized to receive the
    medical information.

6   (g) States the specific uses and limitations on the use of the medical information by the
7   persons or entities authorized to receive the medical information.

8   (h) States a specific date after which the provider of health care, health care service plan,
    pharmaceutical company, or contractor is no longer authorized to disclose the medical
9   information.

10  (i) Advises the person signing the authorization of the right to receive a copy of the
11  authorization.

12  Cal. Civ. Code § 56.11.

13      18.     Moreover, a health care provider that maintains information for purposes covered by the

14  CMIA is liable for negligent disclosures that arise as the result of an affirmative act—such as

15  implementing a system that records and discloses online patients' personally identifiable information

16  and protected health information. Cal. Civ. Code § 56.36(c).[2] Similarly, if a negligent release occurs

17  and medical information concerning a patient is improperly viewed or otherwise accessed, the

18  individual need not suffer actual damages. Cal. Civ. Code § 56.36(b).

19      19.     "In addition to any other remedies available at law, any individual may bring an action

20  against any person or entity who has negligently released confidential information or records

21  concerning him or her in violation of this part, for either or both of the following: [¶] (1) ... nominal

22  damages of one thousand dollars ($1,000). In order to recover under this paragraph, it shall not be

23  necessary that the plaintiff suffered or was threatened with actual damages. [¶] (2) The amount of actual

24

25  _____

26  [2] "Every provider of health care . . . who creates, maintains, preserves, stores, abandons, destroys, or
    disposes of medical information shall do so in a manner that preserves the confidentiality of the
27  information contained therein. Any provider of health care . . . who negligently creates, maintains,
    preserves, stores, abandons, destroys, or disposes of medical information shall be subject to the remedies
28  and penalties provided under subdivisions (b) and (c) of Section 56.36." Cal. Civ. Code § 56.101(a).

- 5 -

1   damages, if any, sustained by the patient." *Sutter Health v. Superior Ct.*, 227 Cal. App. 4th 1546, 1551,

2   (2014) (quoting Cal. Civ. Code § 56.36(b)).

3   **C.      Sharp's Website**

4       20.      Sharp is the leading health care provider in San Diego, California, with four acute-

5   care hospitals, three specialty hospitals, and three affiliated medical groups. Sharp also owns and

6   operates a full spectrum of other facilities and services, such as: cancer centers, imaging centers, labs,

7   mental health centers, urgent care centers, skilled nursing centers, pharmacies, and rehabilitation and

8   physical therapy. To staff Sharp's extensive health plan, Sharp employs approximately 2,700 physicians

9   and another 19,000 additional employees.

10       21.      Sharp touts itself as San Diego's most comprehensive health care system and offers a

11   broad range of services, including: advance care planning, alcohol and drug dependency, bloodless

12   medicine, cancer treatment, clinical trials, diabetes, ear nose and throat, eating disorders, emergency and

13   urgent care, endoscopy, executive health, eye care, flu care, gastroenterology and liver health, heart and

14   vascular care, home health, hospice, internal medicine, laboratory services, LGBTQ+ friendly care,

15   men's health, mental health, nutrition, occupational health, orthopedics, pediatrics, plastic and

16   reconstructive surgery, pregnancy and child birth, primary care and family health, radiology and

17   diagnostic imaging, rehabilitation and physical therapy, senior care, skilled nursing, sleeping disorders,

18   stroke and neurology, transplant, urology, weight-loss and weight management services, women's care,

19   and wound and hyperbaric care.

20       22.      Sharp's website, www.sharp.com, is accessible on mobile devices and desktop

21   computers, which includes an online chat function that connects users with a Sharp care specialist in

22   real-time. Sharp also allows users to interact with its health system via a mobile application, the Best

23   Health app, which is available for download on Android and iPhone devices.

24

25

26

27

28

- 6 -

**D.   Facebook's Platform and its Business Tools**

23.     Facebook describes itself as a "real identity platform,"[3] meaning users are allowed only one account and must share "the name they go by in everyday life."[4] To that end, when creating an account, users must provide their first and last name, along with their birthday and gender.[5]

24.     In 2021, Facebook generated $117 billion in revenue.[6] Roughly 97% of that came from selling advertising space.[7]

25.     Facebook sells advertising space by highlighting its ability to target users.[8] Facebook can target users so effectively because it surveils user activity both on and off its site.[9] This allows Facebook to make inferences about users beyond what they explicitly disclose, like their "interests," "behavior," and "connections."[10] Facebook compiles this information into a generalized dataset called "Core Audiences," which advertisers use to apply highly specific filters and parameters for their targeted advertisements.[11]

---

[3] Sam Schechner and Jeff Horwitz, *How Many Users Does Facebook Have? The Company Struggles to Figure It Out*, WALL. ST. J. (Oct. 21, 2021), https://www.wsj.com/articles/how-many-users-does-facebook-have-the-company-struggles-to-figure-it-out-11634846701.

[4] *Facebook Community Standards: Account Integrity and Authentic Identity*, FACEBOOK, https://transparency.fb.com/policies/community-standards/account-integrity-and-authentic-identity/ (last visited Nov. 29, 2022).

[5] *Sign Up*, FACEBOOK, https://www.facebook.com/ (last visited Nov. 29, 2022).

[6] *Meta Reports Fourth Quarter and Full Year 2021 Results*, FACEBOOK (Feb. 2, 2022), https://investor.fb.com/investor-news/press-release-details/2022/Meta-Reports-Fourth-Quarter-and-Full-Year-2021-Results/default.aspx.

[7] *Id.*

[8] *Why Advertise on Facebook, Instagram or other Meta technologies*, FACEBOOK, https://www.facebook.com/business/help/205029060038706 (last visited Nov. 29, 2022).

[9] *About Meta Pixel*, FACEBOOK, https://www.facebook.com/business/help/742478679120153?id=1205376682832142 (last visited Nov. 29, 2022).

[10] *Ad Targeting. Help your ads vind the people who will love your business*, FACEBOOK, https://www.facebook.com/business/ads/ad-targeting (last visited Nov. 29, 2022).

[11] *Core Audiences*, FACEBOOK, https://www.facebook.com/business/news/Core-Audiences (last visited Nov. 29, 2022).

- 7 -

26.     Advertisers can also build "Custom Audiences."[12] Custom Audiences enables advertisers to reach "people who have already shown interest in [their] business, whether they're loyal customers or people who have used [their] app or visited [their] website."[13] With Custom Audiences, advertisers can target existing customers directly, and they can also build a "Lookalike Audiences," which "leverages information such as demographics, interests, and behavior from your source audience to find new people who share similar qualities."[14] Unlike Core Audiences, advertisers can build Custom Audiences and Lookalike Audiences only if they first supply Facebook with the underlying data. They can do so through two mechanisms: by manually uploading contact information for customers, or by utilizing Facebook's "Business Tools."[15]

27.     As Facebook puts it, the Business Tools "help website owners and publishers, app developers and business partners, including advertisers and others, integrate with Meta, understand and measure their products and services, and better reach and serve people who might be interested in their products and services."[16] Put more succinctly, Facebook's Business Tools are bits of code that advertisers can integrate into their website, mobile applications, and servers, thereby enabling Facebook to intercept and collect user activity on those platforms.

28.     The Business Tools are automatically configured to capture certain data, like when a user visits a webpage, that webpage's Universal Resource Locator ("URL") and metadata, or when a

---

[12] *About Custom Audiences*, FACEBOOK, https://www.facebook.com/business/help/744354708981227?id=2469097953376494 (last visited Nov. 29, 2022).

[13] *Ad Targeting: Help your ads vind the people who will love your business*, FACEBOOK, https://www.facebook.com/business/ads/ad-targeting (last visited Nov. 29, 2022).

[14] *About Lookalike Audiences*, FACEBOOK, https://www.facebook.com/business/help/164749007013531?id=401668390442328 (last visited Nov. 29, 2022).

[15] *Create a customer list Custom Audience*, FACEBOOK, https://www.facebook.com/business/help/170456843145568?id=2469097953376494 (last visited Nov. 29, 2022); *Create a Website Custom Audience*, FACEBOOK, https://www.facebook.com/business/help/1474662202748341?id=2469097953376494 (last visited Nov. 29, 2022).

[16] *The Meta Business Tools*, FACEBOOK, https://www.facebook.com/help/331509497253087 (last visited Nov. 29, 2022).

user downloads a mobile application or makes a purchase.[17] Facebook's Business Tools can also track other events. Facebook offers a menu of "standard events" from which advertisers can choose, including what content a visitor views or purchases.[18] Advertisers can even create their own tracking parameters by building a "custom event."[19]

29.     One such Business Tool is the Facebook Tracking Pixel. Facebook offers this piece of code to advertisers, like Sharp, to integrate into their website. As the name implies, the Facebook Pixel "tracks the people and type of actions they take."[20] When a user accesses a website that has installed the Facebook Pixel into its code, Facebook's software script surreptitiously directs the user's browser to send a separate message to Facebook's servers. This second, secret transmission contains the original GET request sent to the host website, along with additional data that the Facebook Pixel is configured to collect. This transmission is initiated by Facebook code and concurrent with the communications with the host website. Two sets of code are thus automatically run as part of the browser's attempt to load and read Defendant's websites—Defendant's own code, and Facebook's embedded code.

30.     An example illustrates the point. When an individual navigates to www.sharp.com and clicks on a particular physician's profile—or any other webpage installed with Facebook Pixel—the individual's browser sends a GET request to Defendant's server requesting that server to load the particular webpage. Facebook Pixel, via cookies and embedded code, silently instructs the user's browser to duplicate and transmit the user's communications with www.sharp.com, sending the

---

[17] *See Meta Pixel. Advanced.* FACEBOOK, https://developers.facebook.com/docs/facebook-pixel/advanced/ (last visited Nov. 29, 2022); *see also Best practices for Meta Pixel setup*, FACEBOOK, https://www.facebook.com/business/help/218844828315224?id=1205376682832142 (last visited Nov. 29, 2022); *App Events API*, FACEBOOK, https://developers.facebook.com/docs/marketing-api/app-event-api/ (last visited Nov. 29, 2022).

[18] *Specifications for Meta Pixel standard events*, FACEBOOK, https://www.facebook.com/business/help/402791146561655?id=1205376682832142 (Nov. 29, 2022).

[19] *About standard and custom website events*, FACEBOOK, https://www.facebook.com/business/help/964258670337005?id=1205376682832142 (Nov. 29, 2022); *App Events API*, FACEBOOK, https://developers.facebook.com/docs/marketing-api/app-event-api/ (Nov. 29, 2022).

[20] *Retargeting*, FACEBOOK, https://www.facebook.com/business/goals/retargeting (last visited Nov. 29, 2022).

CLASS ACTION COMPLAINT

1   corresponding data to Facebook's servers, alongside additional information that transcribes the

2   communication's content and the individual's identity.

3        31.     After collecting and intercepting this information, Facebook processes it, analyzes it,

4   and assimilates it into datasets like Core Audiences and Custom Audiences.

5   **E.    How Sharp Discloses Class Members Protected Health Information and Assists with**
        **Intercepting Communications**

6

7        32.     Through the Facebook Pixel, Sharp shares its patients' identities and online activity,

8   including information and search results related to their private medical treatment.

9        33.     For example, when a patient enters www.sharp.com/hospitals/memorial and searches

10  for a doctor, they select the "Find a Sharp Memorial doctor," which takes them to the "San Diego

11  Doctors" page.

12

13  

14

15

16

17

18

19

20

21

22

23

24  ***Figure 1.*** Image of www.sharp.com/hospitals/memorial's landing page

25

26

27

28

- 10 -

**Figure 2.** Defendant directs patients to its "San Diego Doctors" webpage.

34.     If a patient selects the pre-determined filters on Defendant's website or uses the websites' general search bar or chat, the terms and phrases are transmitted to Facebook, even if they contain a patient's treatment, procedures, medical conditions, and related queries.

- 11 -

*Figure 3* [21]

35.     Patients may also conduct searches through filters that allow them to narrow search results based on distance from a particular location, "Specialty," "Appointment Options," and "Medical Group." Patients can also narrow their search results based on the provider's gender and spoken languages.

---

[21] On information and belief, the text users type into the search bar is transmitted and included in the web address and URL that corresponds with the search results. *See, e.g.*, https://www.sharp.com/ search/?q=cardiovascular (last accessed Nov. 29, 2022).

- 12 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Figures 4 & 5*

CLASS ACTION COMPLAINT

1    36.      After taking any of these actions on the Find a Doctor page, patients are subsequently

2   directed to the provider search results page, and their selections or search parameters are automatically

3   transmitted.

4



**Figure 6.** Defendant's provider search results webpage identifies doctors that fit the patient's search criteria.

18    37.      Once a patient chooses a doctor, all of the information that patient has submitted on

19  Sharp's website is automatically sent directly to Facebook. On information and belief, and using the

20  following graphic as an example, the information transmitted to Facebook includes: (1) the patient's

21  unique and persistent Facebook ID (c_user ID), (2) the fact that the patient clicked on a specific

22  provider's profile page (Dr. Allison Diamant in the example below), (3) the patient's search parameters

23  (demonstrating they specifically searched for a female doctor, specialized in Internal Medicine, who is

24  also recognized as an "LGBTQ Champion,"), and (4) the patient's location filter (demonstrating the

25  patient sought a provider located in Santa Monica).

26

27

28

CLASS ACTION COMPLAINT

EXHIBIT B
PAGE 29

```
 + https://www.facebook.com/tr/?id=2228363922712900&ev=Microdata&dl=https%3A%2F%2Fwww.uclahealth.or
g%2Fproviders%2Fallison-diamant&rl=https%3A%2F%2Fwww.uclahealth.org%2Fproviders%2Fsearch%3Ff%255B
0%255D%3Dbook-online%253A1%26f%255B1%255D%3Dgender%253Afemale%26f%255B2%255D%3Dlgbtq-champion%253A
1%26f%255B3%255D%3Dspecialty%253A48291%26s%3Dsanta%2520monica&if=false&ts=1642513633375&cd[DataLay
er]=%5B%5D&cd[Meta]=%7B%22title%22%3A%22Allison%20L.%20Diamant%2C%20MD%2C%20MSHS%20%7C%20Internal%
20Medicine%20-%20Santa%20Monica%2C%20CA%22%7D&cd[OpenGraph]=%7B%7D&cd[Schema.org]=%5B%5D&cd[JSON-L
D]=%5B%5D&sw=1536&sh=864&v=2.9.48&r=stable&ec=1&o=30&fbp=fb.1.1642500078069.1683984616it=164251363
1801&coo=false&dpo=LDU&dpoco=0&dpost=0&es=automatic&tm=3&exp=p1&rqm=GET

HEADERS
 + accept:                 image/avif,image/webp,image/apng,image/svg+xml,image/*,*/*;q=0.8
 + accept-encoding:        gzip, deflate, br
 + accept-language:        en-US,en;q=0.9
 + connection:             keep-alive
 + cookie:                 sb=pI_mYbDjWuo9xLOujLYAqmgj; datr=pY_mYUQlzBjVOgoTvf8Fc5kk; dpr=1.25;
                           c_user=1000[████████]; xs=31%3AixsejnhZuCR64w%3A2%3A1642500031%3A-1%3A-1;
                           fr=0lFW0ez5zBqyosnvK.AWUQOz3O06Xiyeb4ABdDft7tfpw.Bh5o-k.XV.AAA.0.0.Bh5o-
                           _.AWWrZTrctzQ; spin=r.1004946732_b.trunk_t.1642500037_s.1_v.2_
 + host:                   www.facebook.com
 + referer:                https://www.uclahealth.org/
```

**Figure 7** [22]

38.     Defendant's website includes a feature that allows patients to book appointments through a particular doctor's profile page. Once the patient clicks on the "Book Appointment" button, this action is immediately communicated and shared with Facebook. Facebook classifies this event as a "SubscribedButtonClick," which indicates that the patient clicked the specific button (in order to book an appointment with the specific doctor). Similarly, each doctor's profile page provides a direct link that allows a patient to call the doctor's office, and, upon clicking the telephone number button, the patient's click is shared with Facebook.

39.     Sharp's website allows online patients to request an appointment with certain doctors they have not been to before by selecting "Book an Appointment" button and completing an online form. Upon doing this, Defendant shares the patient's selection immediately with Facebook.

---

[22] The screenshot above serves as example and demonstrates the types of data transmitted during an HTTP single communication session. This information is automatically sent from the patient's device to Facebook, and it reveals the patients FID (c_user field) along with each search filter the patient selected.

EXHIBIT B
PAGE 30

```
+ https://www.facebook.com/tr/?id=2228363922712906&ev=SubscribedButtonClick&dl=https%3A%2F%2Fww
w.uclahealth.org%2Fproviders%2Fallison-diamant&rl=https%3A%2F%2Fwww.uclahealth.org%2Fproviders%2
Fsearch%3Ff%255B0%255D%3Dbook-online%253A1%26f%255B1%255D%3Dgender%253Afemale%26f%255B2%255D%3Dl
gbtq-champion%253A1%26f%255B3%255D%3Dspecialty%253A48291%26s%3Dsanta%2520monica&if=false&ts=1642
515885628&cd[buttonFeatures]=%7B%22classList%22%3A%22button%20button--primary-alt%20button--smal
l%22%2C%22destination%22%3A%22%2C%22id%22%3A%22%2C%22imageUrl%22%3A%22%2C%22innerText%2
2%3A%22Book%20an%20Appointment%22%2C%22numChildButtons%22%3A0%2C%22tag%22%3A%22button%22%2C%22na
me%22%3A%22%2C%22value%22%3A%22%22%7D&cd[buttonText]=Book%20an%20Appointment&cd[formFeatures]
=%5B%5D&cd[pageFeatures]=%7B%22title%22%3A%22Allison%20L.%20Diamant%2C%20MD%2C%20MSHS%20%7C%20In
ternal%20Medicine%20-%20Santa%20Monica%2C%20CA%22%7D&cd[parameters]=%5B%5D&sw=1920&sh=1080&v=2.
9.48&r=stable&ec=2&o=30&fbp=fb.1.1642500078069.1683984618it=1642513631801&coo=false&dpo=LDU&dpoc
o=0&dpost=0&es=automatic&tm=3&exp=p1&rqm=GET
```

HEADERS

| | |
|---|---|
| + accept: | image/avif,image/webp,image/apng,image/svg+xml,image/*,*/*;q=0.8 |
| + accept-encoding: | gzip, deflate, br |
| + accept-language: | en-US,en;q=0.9 |
| + connection: | keep-alive |
| + cookie: | sb=pI_mYbDjWuo9xLOuJLYAqmgj; datr=pY_mYUQlzBjV0goTvf8Fc5kk; dpr=1.25; c_user=10007█████████; xs=31%3AixsejnhZuCR64w%3A2%3A1642500031%3A-1%3A3A-1; fr=0lFW0ez5zBqyosnvK.AWUQQz3O06Xiyeb4ABdDft7tfpw.Bh5o-k.XV.AAA.0.0.Bh5o-_.AWWrZTrctzQ; spin=r.1004946732_b.trunk_t.1642500037_s.1_v.2_ |
| + host: | www.facebook.com |
| + referer: | https://www.uclahealth.org/ |

**Figure 8** [23]

---

[23] The screenshot above serves as example and demonstrates the types of data transmitted during an HTTP single communication session. This information is automatically sent from the patient's device to Facebook, and it reveals the patients FID (c_user field) along with information indicating that the user booked an appointment with a particular physician.

**Figure 9**

**Figure 10** [24]

---

[24] Figures 9 and 10 are not specific to Defendant's web page or to Plaintiff's search queries but nonetheless demonstrate *how* and *what* is communicated via the Facebook Pixel. Importantly, this occurred without Plaintiff's knowledge or consent because patients' communications with

(footnote continued)

- 17 -

40.     Each time Defendant sends this activity data, it also discloses a patient's personally identifiable information.

41.     A user who accesses Defendant's website while logged into Facebook will have the c_user cookie transmitted to Facebook, which contains that user's unencrypted Facebook ID. Some of the cookies Facebook may receive are visible here:

| presence | C%7B... | .facebook.com |
| xs | 3%3Ar... | .facebook.com |
| c_user | 10003... | .facebook.com |
| fr | 00ZpYJ... | .facebook.com |
| datr | MalzYj... | .facebook.com |
| sb | qqAzY... | .facebook.com |

**Figure 11**

42.     When a visitor's browser has recently logged out of an account, Facebook compels the visitor's browser to send a smaller set of cookies.[25]

| fr | 00Zp... | .facebook.com |
| wd | 1156... | .facebook.com |
| sb | qqAz... | .facebook.com |
| datr | Malz... | .facebook.com |

**Figure 12**

43.     The fr cookie contains, at least, an encrypted Facebook ID and browser identifier.[26] Facebook, at a minimum, uses the fr cookie to identify users.[27] At each stage, Defendant also utilizes the _fbp cookie, which attaches to a browser as a first-party cookie, and which Facebook uses to identify a browser and a user.[28]

---

www.sharp.com are simultaneously duplicated and transmitted to Facebook, alongside their unique Facebook ID (c_user ID), during a single HTTP communication session.

[25] Not pictured here and in the preceding image is the _fbp cookie, which is transmitted as a first-party cookie. . .

[26] *Facebook Ireland Ltd: Report of Re-Audit*, DATA PROTECTION COMMISSIONER (Sept. 21, 2012), http://www.europe-v-facebook.org/ODPC_Review.pdf.

[27] *Cookies Policy*, FACEBOOK, https://www.facebook.com/policy/cookies/ (last visited Nov. 29, 2022).

[28] *Id.*

- 18 -

44.     The fr cookie expires after 90 days unless the visitor's browser logs back into Facebook or it is otherwise used to visit the same website.[29]  If that happens, the time resets, and another 90 days begins to accrue.[30]

45.     The Facebook Tracking Pixel uses both first and third-party cookies. A first-party cookie is "created by the website the user is visiting"—i.e., www.sharp.com.[31] A third-party cookie is "created by a website with a domain name other than the one the user is currently visiting"—i.e , Facebook.[32] The _fbp cookie is always transmitted as a first-party cookie. A duplicate _fbp cookie is sometimes sent as a third-party cookie, depending on whether the browser has recently logged into Facebook.

46.     Facebook, at a minimum, uses the fr, _fbp, and c_user cookies to link to Facebook IDs and corresponding Facebook profiles, and, as shown in the above figures, Defendant sends these identifiers alongside the event data.

47.     Plaintiffs never consented, agreed, authorized, or otherwise permitted Sharp to disclose their personally identifiable information and protected health information and assist with intercepting their communications. Plaintiffs were never provided with any written notice that Defendant discloses its website users' protected health information, nor were they provided any means of opting out of such disclosures. Defendant nonetheless knowingly disclosed Plaintiffs' protected health information to Facebook.

48.     By law, Plaintiffs are entitled to privacy in their protected health information and confidential communications. Sharp deprived Plaintiffs of their privacy rights when it: (1) implemented

---

[29] *Id.*

[30] Confirmable through developer tools.

[31] *First-party cookie*, PC MAG, https://www.pcmag.com/encyclopedia/term/first-party-cookie (last visited Nov. 29, 2022). This is confirmable by using developer tools to inspect a website's cookies and track network activity.

[32] *Id.* This is also confirmable by tracking network activity.

- 19 -

EXHIBIT B
PAGE 34

a system that surreptitiously tracked, recorded, and disclosed Plaintiffs' and other online patients' confidential communications, personally identifiable information, and protected health information; (2) disclosed patients' protected information to Facebook—an unauthorized third-party eavesdropper; and (3) undertook this pattern of conduct without notifying Plaintiffs' and without obtaining their express written consent. Plaintiffs did not discover until November of 2022 that Sharp disclosed their personally identifiable information and protected health information to Facebook and assisted Facebook with intercepting their communications.

## CLASS ACTION ALLEGATIONS

49.    **Class Definition:** Pursuant to section 382 of the Code of Civil Procedure, Plaintiffs bring this action on behalf of themselves and other similarly situated individuals (the "Class"), defined as California citizens who, during the class period, had their personally identifiable information or protected health information improperly disclosed to Facebook through the use of the Facebook Pixel tracking tool as a result of or in connection with using www.sharp.com. Plaintiffs reserve the right to modify the class definitions or add sub-classes as necessary prior to filing a motion for class certification.

50.    The "Class Period" is the time period beginning on the date established by the Court's determination of any applicable statute of limitations, after consideration of any tolling, concealment, and accrual issues, and ending on the date of entry of judgment.

51.    Excluded from the Class is Defendant; any affiliate, parent, or subsidiary of Defendant; any entity in which Defendant has a controlling interest; any officer or director of Defendant; any successor or assign of Defendant; anyone employed by counsel in this action; any judge to whom this case is assigned, his or her spouse and immediate family members; and members of the judge's staff.

52.    **Numerosity/Ascertainability**. Members of the Class are so numerous that joinder of all members would be unfeasible and not practicable. The exact number of Class members is unknown to Plaintiffs at this time; however, it is estimated that there are hundreds of thousands of individuals in the Class. The identity of such membership is readily ascertainable from Sharp's records and non-party Facebook's records.

- 20 -

EXHIBIT B
PAGE 35

53.     **Typicality**. Plaintiffs' claims are typical of the claims of the Class because Plaintiffs used www.sharp.com and had their personally identifiable information and protected health information disclosed to Facebook without their express written authorization or knowledge. Plaintiffs' claims are based on the same legal theories as the claims of other Class members.

54.     **Adequacy**. Plaintiffs are fully prepared to take all necessary steps to represent fairly and adequately the interests of the Class members. Plaintiffs' interests are coincident with, and not antagonistic to, those of the members of the Class. Plaintiffs are represented by attorneys with experience in the prosecution of class action litigation generally and in the emerging field of digital privacy litigation specifically. Plaintiffs' attorneys are committed to vigorously prosecuting this action on behalf of the members of the Class.

55.     **Common Questions of Law and Fact Predominate/Well Defined Community of Interest**. Questions of law and fact common to the members of the Class predominate over questions that may affect only individual members of the Class because Defendant has acted on grounds generally applicable to the Class. Such generally applicable conduct is inherent in Defendant's wrongful conduct. Questions of law and fact common to the Classes include:

(a)     Whether Defendant intentionally tapped the lines of internet communication between patients and their medical providers;

(b)     Whether Defendant's website surreptitiously records personally identifiable information, protected health information, and related communications and subsequently, or simultaneously, discloses that information to Facebook;

(c)     Whether Facebook is a third-party eavesdropper;

(d)     Whether Defendant's disclosures of personally identifiable information, protected health information, and related communications constitute an affirmative act of communication;

(e)     Whether Defendant's conduct, which allowed Facebook—an unauthorized person—to view Plaintiffs' and Class members' personally identifiable information and protected health information, resulted in a breach of confidentiality;

- 21 -

EXHIBIT B
PAGE 36

(f)     Whether Defendant violated Plaintiffs' and Class members' privacy rights by using Facebook's tracking pixel to record and communicate online patients' FIDs alongside their confidential medical communications;

(g)     Whether Plaintiffs and Class members are entitled to damages under CIPA, the CMIA, or any other relevant statute;

(h)     Whether Defendant's actions violate Plaintiffs' and Class members' privacy rights as provided by the California Constitution;

56.     **Superiority**. Class action treatment is a superior method for the fair and efficient adjudication of the controversy. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities a method for obtaining redress on claims that could not practicably be pursued individually, substantially outweighs potential difficulties in management of this class action. Plaintiffs know of no special difficulty to be encountered in litigating this action that would preclude its maintenance as a class action.

## CLAIMS FOR RELIEF

### COUNT I
**Violations of the California Invasion of Privacy Act,
Cal. Penal Code § 631**

57.     Plaintiffs repeat the allegations contained in the paragraphs above as if fully set forth herein and bring this Count individually and on behalf of the members of the Class.

58.     The California Invasion of Privacy Act ("CIPA") is codified at Cal. Penal Code §§ 630 to 638. The Act begins with its statement of purpose.

> The Legislature hereby declares that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society.

Cal. Penal Code § 630.

- 22 -

59.    California penal Code section 631(a) provides, in pertinent part:

> Any person who, by means of any machine, instrument, or contrivance, or in any other manner ... willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or *who aids, agrees with, employs, or conspires* with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section, is punishable by a fine not exceeding two thousand five hundred dollars ($2,500).

Cal. Penal Code § 631(a) (emphasis added).

60.    A defendant must show it had the consent of *all* parties to a communication.

61.    At all relevant times, Defendant aided, agreed with, and conspired with Facebook to track and intercept Plaintiffs' and Class Members' internet communications while accessing www.sharp.com. They intercepted these communications without authorization and consent from Plaintiffs and Class Members.

62.    Defendant, when aiding and assisting Facebook's eavesdropping, intended to help Facebook learn some meaning of the content in the URLs and the content the visitor requested.

63.    The following items constitute "machine[s], instrument[s], or contrivance[s]" under the CIPA, and even if they do not, the Facebook Tracking Pixel falls under the broad catch-all category of "any other manner":

    a.    The computer codes and programs Facebook used to track Plaintiffs' and the Class Members' communications while they were navigating www.sharp.com;

    b.    The Plaintiffs' and Class Member's browsers;

    c.    The Plaintiffs' and Class Members' computing and mobile devices;

    d.    Facebook's web and ad servers;

    e.    The web and ad-servers from which Facebook tracked and intercepted the Plaintiffs' and Class Members' communications while they were using a web browser to access or navigate the www.sharp.com;

- 23 -

f.     The computer codes and programs used by Facebook to effectuate its tracking and interception of the Plaintiffs' and Class Members' communications while they were using a browser to visit Defendant's website; and

g.     The plan Facebook carried out to effectuate its tracking and interception of the Plaintiffs' and Class Members' communications while they were using a web browser or mobile application to visit Defendant's website.

64.     Defendant failed to disclose that it is used Facebook Pixel specifically to track and automatically transmit its patients' private and confidential communications to a third party, i.e., Facebook. Moreover, the Patient Privacy Notice states that sharing information about patients for marketing or sale of health information requires patients' authorization (as it does for every disclosure of health information not provided for under the Privacy Policy).

65.     The patient communication information that Defendant transmitted using Facebook Pixel, such as doctor appointment booking information, constitutes protected health information.

66.     As demonstrated hereinabove, Defendant violated CIPA by aiding and permitting third parties to receive its patients' online communications through its website without their consent.

67.     By disclosing Plaintiffs' and the Class's Private Health Information, Defendant violated Plaintiffs' and Class Members' statutorily protected right to privacy.

68.     As a result of the above violations, Defendant is liable to the Plaintiffs and other Class Members for actual damages related to their loss of privacy in an amount to be determined at trial or alternatively for "liquidated damages not less than $2,500 per plaintiff." Pursuant to CIPA Section 637.2, any person who has been injured by a violation of CIPA may recover $5,000 dollars per violation or three times the amount of actual damages (the greater of these two options). Additionally, Section 637.2 specifically states that "[it] is not a necessary prerequisite to an action pursuant to this section that the plaintiffs has suffered, or be threatened with, actual damages."

69.     Under the statute, Defendant is also liable for reasonable attorney's fees, and other litigation costs, injunctive and declaratory relief, and punitive damages in an amount to be determined by a jury, but sufficient to prevent the same or similar conduct by the Defendant in the future.

- 24 -

EXHIBIT B
PAGE 39

1

2

**COUNT II**
**Violations Of the California Confidentiality of Medical Information Act**
**Cal. Civ. Code § 56.10**

3      70.     Under the California Confidentiality of Medical Information Act ("CMIA") section

4   56.10, providers of health care are prohibited from disclosing medical information relating to their

5   patients, without a patient's authorization. Medical information refers to "any individually identifiable

6   information, in electronic or physical form, in possession of or derived from a provider of health care.

7   . . regarding a patient's medical history, mental or physical condition, or treatment. 'Individually

8   Identifiable' means that the medical information includes or contains any element of personal

9   identifying information sufficient to allow identification of the individual . . . ." Cal. Civ. Code § 56.05.

10      71.     Plaintiffs and Class Members are patients, and, as a health care provider, Defendant has

11   an ongoing obligation to comply with the CMIA's requirements.

12      72.     As set forth hereinabove, Facebook ID is an identifier sufficient to allow identification

13   of an individual. Along with patients' Facebook ID, Sharp discloses to Facebook several pieces of

14   information regarding its patients' use of its website, which includes, but is not limited to: patient

15   medical conditions, medical concerns, treatment patients are seeking, doctor appointments, medical

16   specialty of the doctor(s) searched for by patients, and patient information regarding COVID-19.

17      73.     This patient information is derived from a provider of health care regarding patients'

18   medical treatment and physical condition. Accordingly, it constitutes medical information pursuant to

19   the CMIA.

20      74.     As demonstrated hereinabove, Sharp failed to obtain its patients' authorization for the

21   disclosure of medical information and failed to disclose in its Privacy Policy and Privacy Practices that

22   it shares protected health information for marketing purposes.

23      75.     Pursuant to CMIA section 56.11, a valid authorization for disclosure of medical

24   information must be (1) "clearly separate from any other language present on the same page and is

25   executed by a signature which serves no other purpose than to execute the authorization" (2) signed

26   and dated by the patient or his representative (3) state the name and function of the third party that

27   receives the information (4) state a specific date after which the authorization expires. Accordingly, the

28

- 25 -

EXHIBIT B
PAGE 40

1  information set forth in Sharp's Notice of Privacy Practices, Patient's Rights, and Website Terms of

2  Use do not qualify as a valid authorization.

3      76.    Based on the above, Sharp violated the CMIA by disclosing its patients' medical

4  information with Facebook along with the patients' Facebook ID.

5      77.    Under the CMIA, a patient may recover compensatory damages, punitive damages not

6  to exceed $3,000 dollars and attorneys' fees not to exceed $1,000, and the costs of litigation for any

7  violating disclosure of medical information. Alternatively, a patient may recover nominal damages of

8  $1,000 for any negligent release of medical information.

9                                   **COUNT III**

10               **Invasion of Privacy Under California's Constitution**

11     78.    Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth

12  herein and bring this claim individually and on behalf of the members of the proposed Class.

13     79.    Plaintiffs and Class Members have an interest in: (1) precluding the dissemination

14  and/or misuse of their sensitive, confidential communications and protected health information; and (2)

15  making personal decisions and/or conducting personal activities without observation, intrusion or

16  interference, including, but not limited to, the right to visit and interact with various internet sites

17  without being subjected to wiretaps without Plaintiffs' and Class Members' knowledge or consent.

18     80.    At all relevant times, by using Facebook's tracking pixel to record and communicate

19  patients' FIDs alongside their confidential medical communications, Sharp intentionally invaded

20  Plaintiffs' and Class Members' privacy rights under the California Constitution.

21     81.    Plaintiffs and Class Members had a reasonable expectation that their communications,

22  identity, health information, and other data would remain confidential and that Sharp would not install

23  wiretaps on www.sharp.com.

24     82.    Plaintiffs and Class Members did not authorize Sharp to record and transmit Plaintiffs'

25  and Class Members' private medical communications alongside their personally identifiable health

26  information.

27

28

- 26 -

EXHIBIT B
PAGE 41

83.     This invasion of privacy is serious in nature, scope, and impact because it relates to patients' private medical communications. Moreover, it constitutes an egregious breach of the societal norms underlying the privacy right.

84.     Accordingly, Plaintiffs and Class Members seek all relief available for invasion of privacy claims under California's Constitution.

## COUNT IV

### Breach of Fiduciary Duty

85.     Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein and bring this claim individually and on behalf of the members of the proposed Class.

86.     Plaintiffs and Class Members provided Defendant their sensitive information through Defendant's website in confidence in connection with obtaining medical treatment, believing that Sharp would protect that information. Plaintiffs and Class Members would not have provided Sharp with this information had they known it would not be adequately protected and that it would be transmitted to unauthorized third parties, namely Facebook. Sharp's acceptance and storage of Plaintiffs' and Class members' sensitive health information created a fiduciary relationship between Sharp and Plaintiffs and Class members. In light of this relationship, Sharp must act primarily for the benefit of its patients, which includes safeguarding and protecting their sensitive information and not disclosing it to unauthorized parties or persons.

87.     Sharp has a fiduciary duty to act for the benefit of Plaintiffs and Class Members upon matters within the scope of their relationship. It breached that duty by failing to properly protect the integrity of Plaintiffs' and Class Members' sensitive health information, failing to comply with the data security guidelines set forth by HIPAA, transmitting the information it received through its website to third parties without authorization, and otherwise failing to keep confidential Plaintiffs' and Class members' sensitive information.

88.     As a direct and proximate result of Sharp's breaches of its fiduciary duties, Plaintiffs and Class members have suffered and will suffer injury, including, but not limited to the compromise and publication of their sensitive information and an intrusion upon their right to privacy.

- 27 -

**RELIEF REQUESTED**

89. Plaintiffs, on behalf of themselves and the proposed Class, respectfully request that the Court grant the following relief:

(a) Certification of this action as a class action and appointment of Plaintiffs and Plaintiffs' counsel to represent the Class;

(b) A declaratory judgment that Defendant violated the California Invasion of Privacy Act, Cal. Penal Code § 631(a);

(c) A declaratory judgment that Defendant violated the California Confidentiality of Medical Information Act, Cal. Civ. Code §§ 56, *et seq.*;

(d) A declaratory judgment that Defendant violated Plaintiffs' and Class Members' privacy rights as provided at common law and pursuant to the California Constitution;

(e) An order enjoining Defendant from engaging in the unlawful practices and illegal acts described herein;

(f) For actual or statutory damages;

(g) For punitive damages, as warranted, in an amount to be determined at trial;

(h) For prejudgment interest on all amounts awarded;

(i) For injunctive relief as pleaded or as the Court may deem proper;

(j) For an order awarding Plaintiffs and the Class their reasonable attorneys' fees and expenses and costs of suit pursuant to California Code of Civil Procedure section 1021.5 and/or other applicable law; and

(k) Such other and further relief as the Court may deem appropriate.

**DEMAND FOR JURY TRIAL**

90. Plaintiffs, on behalf of themselves and the proposed Class, demand a trial by jury for all of the claims asserted in this Complaint so triable.

Dated: December 2, 2022

Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com

- 28 -

Christopher E. Stiner (SBN 276033)
cstiner@ahdootwolfson.com
Deborah De Villa (SBN 312564)
ddevilla@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505
Telephone: (310) 474-9111
Facsimile:  (310) 474-8585

John J. Nelson
jnelson@milberg.com
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive
Beverly Hills, CA 90212
Telephone: (858) 209-6941

*Attorneys for Plaintiff and the Putative Class*

- 29 -

# EXHIBIT C

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Tina Wolfson (SBN 174806)
AHDOOT & WOLFSON, PC, 2600 W. Olive Avenue, Suite 500, Burbank, CA 91505

TELEPHONE NO.: (310) 474-9111   FAX NO. (Optional): (310) 474-8585
E-MAIL ADDRESS: twolfson@ahdootwolfson.com
ATTORNEY FOR (Name): Plaintiff Linda Camus and Deanna Franklin-Pittman

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  SAN DIEGO
STREET ADDRESS: 330 West Broadway
MAILING ADDRESS:
CITY AND ZIP CODE: San Diego, CA 92101
BRANCH NAME: Hall of Justice

CASE NAME:
Linda Camus, et al. v. Sharp Healthcare

FOR COURT USE ONLY

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego
**12/02/2022** at 05:32:33 PM
Clerk of the Superior Court
By Elizabeth Reyes, Deputy Clerk

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [x] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter [ ] Joinder | 37-2022-00048546-CU-NP-CTL |
| | | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: Judge Richard S. Whitney |
| | | | DEPT: |

Items 1–6 below must be completed (see instructions on page 2).

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [x] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition (not specified above) (43)

2. This case [x] is [ ] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [x] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [x] Substantial amount of documentary evidence
   d. [x] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [x] monetary  b. [x] nonmonetary; declaratory or injunctive relief  c. [x] punitive
4. Number of causes of action (specify): 4 - Violations of Cal. Penal Code § 631, Cal. Civ. Code § 56.10, Invasion of Privacy, Breach of Fiduciary Duty
5. This case [x] is [ ] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)
Date: December 2, 2022
Tina Wolfson
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. September 1, 2021]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courts.ca.gov

**EXHIBIT C**
**PAGE 45**

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**                                                                 CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property
   Damage/Wrongful Death
Uninsured Motorist (46) *(if the
   case involves an uninsured
   motorist claim subject to
   arbitration, check this item
   instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
   Asbestos Property Damage
   Asbestos Personal Injury/
     Wrongful Death
Product Liability *(not asbestos or
   toxic/environmental)* (24)
Medical Malpractice (45)
   Medical Malpractice–
     Physicians & Surgeons
   Other Professional Health Care
     Malpractice
Other PI/PD/WD (23)
   Premises Liability (e.g., slip
     and fall)
   Intentional Bodily Injury/PD/WD
     (e.g., assault, vandalism)
   Intentional Infliction of
     Emotional Distress
   Negligent Infliction of
     Emotional Distress
   Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
   Practice (07)
Civil Rights (e.g., discrimination,
   false arrest) *(not civil
   harassment)* (08)
Defamation (e.g., slander, libel)
   (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
   Legal Malpractice
   Other Professional Malpractice
     *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
   Breach of Rental/Lease
     Contract *(not unlawful detainer
     or wrongful eviction)*
   Contract/Warranty Breach–Seller
     Plaintiff *(not fraud or negligence)*
   Negligent Breach of Contract/
     Warranty
   Other Breach of Contract/Warranty
Collections (e.g., money owed, open
   book accounts) (09)
   Collection Case–Seller Plaintiff
   Other Promissory Note/Collections
     Case
Insurance Coverage *(not provisionally
   complex)* (18)
   Auto Subrogation
   Other Coverage
Other Contract (37)
   Contractual Fraud
   Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
   Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
   Writ of Possession of Real Property
   Mortgage Foreclosure
   Quiet Title
   Other Real Property *(not eminent
     domain, landlord/tenant, or
     foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
   drugs, check this item; otherwise,
   report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
   Writ–Administrative Mandamus
   Writ–Mandamus on Limited Court
     Case Matter
   Writ–Other Limited Court Case
     Review
Other Judicial Review (39)
   Review of Health Officer Order
   Notice of Appeal–Labor
     Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
   *(arising from provisionally complex
   case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
   Abstract of Judgment (Out of
     County)
   Confession of Judgment *(non-
     domestic relations)*
   Sister State Judgment
   Administrative Agency Award
     *(not unpaid taxes)*
   Petition/Certification of Entry of
     Judgment on Unpaid Taxes
   Other Enforcement of Judgment
     Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
   above)* (42)
   Declaratory Relief Only
   Injunctive Relief Only *(non-
     harassment)*
   Mechanics Lien
   Other Commercial Complaint
     Case *(non-tort/non-complex)*
   Other Civil Complaint
     *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
   Governance (21)
Other Petition *(not specified
   above)* (43)
   Civil Harassment
   Workplace Violence
   Elder/Dependent Adult
     Abuse
   Election Contest
   Petition for Name Change
   Petition for Relief From Late
     Claim
   Other Civil Petition

**EXHIBIT C
PAGE 46**

# EXHIBIT D

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | |
|---|---|
| STREET ADDRESS: | 330 W Broadway |
| MAILING ADDRESS: | 330 W Broadway |
| CITY AND ZIP CODE: | San Diego, CA 92101-3827 |
| DIVISION: | Central |
| TELEPHONE NUMBER: | (619) 450-7068 |

| PLAINTIFF(S) / PETITIONER(S): | Linda Camus et.al. |
|---|---|

| DEFENDANT(S) / RESPONDENT(S): | Sharp Healthcare |
|---|---|

CAMUS VS SHARP HEALTHCARE [EFILE]

| NOTICE OF CASE ASSIGNMENT AND CASE MANAGEMENT CONFERENCE (CIVIL) | CASE NUMBER: 37-2022-00048546-CU-NP-CTL |
|---|---|

**CASE ASSIGNED FOR ALL PURPOSES TO:**

Judge:  Richard S. Whitney                                         Department: C-68

**COMPLAINT/PETITION FILED:** 12/02/2022

| TYPE OF HEARING SCHEDULED | DATE | TIME | DEPT | JUDGE |
|---|---|---|---|---|
| Civil Case Management Conference | 05/05/2023 | 09:30 am | C-68 | Richard S. Whitney |

**Due to the COVID-19 pandemic, all Case Management Conferences (CMCs) are being conducted virtually unless there is a court order stating otherwise.** Prior to the hearing date, visit the "virtual hearings" page for the most current instructions on how to appear for the applicable case-type/department on the court's website at www.sdcourt.ca.gov.

A Case Management Statement (JC Form #CM-110) must be completed by counsel for all parties and by all self-represented litigants and timely filed with the court at least 15 days prior to the initial CMC. (San Diego Superior Court (SDSC) Local Rules, rule 2.1.9; Cal. Rules of Court, rule 3.725).

All counsel of record and self-represented litigants must appear at the CMC, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of Alternative Dispute Resolution (ADR) options.

It is the duty of each plaintiff (and cross-complainant) to serve a copy of this Notice of Case Assignment and Case Management Conference (SDSC Form #CIV-721) with the complaint (and cross-complaint), the Alternative Dispute Resolution (ADR) Information Form (SDSC Form # CIV-730), a Stipulation to Use Alternative Dispute Resolution (ADR) (SDSC Form # CIV-359), and other documents on all parties to the action as set out in SDSC Local Rules, rule 2.1.5.

<u>**TIME FOR SERVICE AND RESPONSE:**</u> The following rules apply to civil cases except for collections cases under California Rules of Court, rule 3.740(a), unlawful detainer actions, proceedings under the Family Code, and other proceedings for which different service requirements are prescribed by law (Cal. Rules of Court, rule 3.110; SDSC Local Rules, rule 2.1.5):
- • **Service:** The complaint must be served on all named defendants, and proof of service filed with the court within 60 days after filing the complaint. An amended complaint adding a defendant must be served on the added defendant and proof of service filed within 30 days after filing of the amended complaint. A cross-complaint against a party who has appeared in the action must be accompanied by proof of service on that party at the time it is filed. If it adds a new party, the cross-complaint must be served on all parties and proof of service on the new party must be filed within 30 days of the filing of the cross-complaint.
- • **Defendant's appearance:** Unless a special appearance is made, each defendant served must generally appear (as defined in Code of Civ. Proc. § 1014) within 30 days of service of the complaint/cross-complaint.
- • **Extensions:** The parties may stipulate without leave of court to one 15-day extension beyond the 30-day time period prescribed for the response after service of the initial complaint (SDSC Local Rules, rule 2.1.6). If a party fails to serve and file pleadings as required under this rule, and has not obtained an order extending time to serve its pleadings, the court may issue an order to show cause why sanctions shall not be imposed.

<u>**JURY FEES:**</u> In order to preserve the right to a jury trial, one party for each side demanding a jury trial shall pay an advance jury fee in the amount of one hundred fifty dollars ($150) on or before the date scheduled for the initial case management conference in the action.

<u>**COURT REPORTERS:**</u> Official Court Reporters are not normally available in civil matters, but may be requested in certain situations no later than 10 days before the hearing date. See SDSC Local Rules, rule 1.2.3 and Policy Regarding Normal Availability and Unavailability of Official Court Reporters (SDSC Form #ADM-317) for further information.

<u>**ALTERNATIVE DISPUTE RESOLUTION (ADR):**</u> The court discourages any unnecessary delay in civil actions; therefore, continuances are discouraged and timely resolution of all actions, including submitting to any form of ADR is encouraged. The court encourages and expects the parties to consider using ADR options prior to the CMC. The use of ADR will be discussed at the CMC. Prior to the CMC, parties stipulating to the ADR process may file the Stipulation to Use Alternative Dispute Resolution (SDSC Form #CIV-359).

**EXHIBIT D**
**PAGE 47**

## NOTICE OF E-FILING REQUIREMENTS
## AND IMAGED DOCUMENTS

Effective April 15, 2021, e-filing is required for attorneys in represented cases in all limited and unlimited civil cases, pursuant to the San Diego Superior Court General Order: In Re Procedures Regarding Electronically Imaged Court Records, Electronic Filing and Access to Electronic Court Records in Civil and Probate Cases.  Additionally, you are encouraged to review CIV-409 for a listing of documents that are not eligible for e-filing.  E-filing is also encouraged, but not mandated, for self-represented litigants, unless otherwise ordered by the court.  All e-filers are required to comply with the e-filing requirements set forth in Electronic Filing Requirements (Civil) (SDSC Form #CIV-409) and Cal. Rules of Court, rules 2.250-2.261.

All Civil cases are assigned to departments that are part of the court's "Imaging Program."  This means that original documents filed with the court will be imaged, held for 30 days, and then destroyed, with the exception of those original documents the court is statutorily required to maintain.  The electronic copy of the filed document(s) will be the official court record, pursuant to Government Code § 68150.  Thus, original documents should not be attached to pleadings filed with the San Diego Superior Court, unless it is a document for which the law requires an original be filed.  Any original documents necessary for a motion hearing or trial shall be lodged in advance of the hearing pursuant to California Rules of Court, rule 3.1302(b).

It is the duty of each plaintiff, cross-complainant, or petitioner to serve a copy of this Notice of Case Assignment and Case Management Conference (Civil) (SDSC Form #CIV-721) with the complaint, cross-complaint, or petition on all parties to the action.

On all pleadings filed after the initial case originating filing, all parties must, to the extent it is feasible to do so, place the words "IMAGED FILE" in all caps immediately under the title of the pleading on all subsequent pleadings filed in the action.

The official court file will be electronic and accessible at one of the kiosks located in the Civil Business Office and may be found on the court's website at www.sdcourt.ca.gov.

# EXHIBIT E

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | |
|---|---|
| STREET ADDRESS: | 330 W Broadway |
| MAILING ADDRESS: | 330 W Broadway |
| CITY AND ZIP CODE: | San Diego, CA 92101-3827 |
| DIVISION: | Central |
| TELEPHONE NUMBER: | (619) 450-7068 |

| PLAINTIFF(S) / PETITIONER(S): | Linda Camus et.al. |
|---|---|
| DEFENDANT(S) / RESPONDENT(S): | Sharp Healthcare |

CAMUS VS SHARP HEALTHCARE [EFILE]

| NOTICE OF CASE ASSIGNMENT AND CASE MANAGEMENT CONFERENCE (CIVIL) | CASE NUMBER: 37-2022-00048546-CU-NP-CTL |
|---|---|

## CASE ASSIGNED FOR ALL PURPOSES TO:

Judge:  Richard S. Whitney                    Department: C-68

## COMPLAINT/PETITION FILED: 12/02/2022

| TYPE OF HEARING SCHEDULED | DATE | TIME | DEPT | JUDGE |
|---|---|---|---|---|
| Civil Case Management Conference | 05/05/2023 | 09:30 am | C-68 | Richard S. Whitney |

**Due to the COVID-19 pandemic, all Case Management Conferences (CMCs) are being conducted virtually unless there is a court order stating otherwise.** Prior to the hearing date, visit the "virtual hearings" page for the most current instructions on how to appear for the applicable case-type/department on the court's website at www.sdcourt.ca.gov.

A Case Management Statement (JC Form #CM-110) must be completed by counsel for all parties and by all self-represented litigants and timely filed with the court at least 15 days prior to the initial CMC.  (San Diego Superior Court (SDSC) Local Rules, rule 2.1.9; Cal. Rules of Court, rule 3.725).

All counsel of record and self-represented litigants must appear at the CMC, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of Alternative Dispute Resolution (ADR) options.

It is the duty of each plaintiff (and cross-complainant) to serve a copy of this Notice of Case Assignment and Case Management Conference (SDSC Form #CIV-721) with the complaint (and cross-complaint), the Alternative Dispute Resolution (ADR) Information Form (SDSC Form # CIV-730), a Stipulation to Use Alternative Dispute Resolution (ADR) (SDSC Form # CIV-359), and other documents on all parties to the action as set out in SDSC Local Rules, rule 2.1.5.

**TIME FOR SERVICE AND RESPONSE:** The following rules apply to civil cases except for collections cases under California Rules of Court, rule 3.740(a), unlawful detainer actions, proceedings under the Family Code, and other proceedings for which different service requirements are prescribed by law (Cal. Rules of Court, rule 3.110; SDSC Local Rules, rule 2.1.5):
- **Service:** The complaint must be served on all named defendants, and proof of service filed with the court within 60 days after filing the complaint.  An amended complaint adding a defendant must be served on the added defendant and proof of service filed within 30 days after filing of the amended complaint.  A cross-complaint against a party who has appeared in the action must be accompanied by proof of service on that party at the time it is filed.  If it adds a new party, the cross-complaint must be served on all parties and proof of service on the new party must be filed within 30 days of the filing of the cross-complaint.
- **Defendant's appearance:** Unless a special appearance is made, each defendant served must generally appear (as defined in Code of Civ. Proc. § 1014) within 30 days of service of the complaint/cross-complaint.
- **Extensions:** The parties may stipulate without leave of court to one 15-day extension beyond the 30-day time period prescribed for the response after service of the initial complaint (SDSC Local Rules, rule 2.1.6).  If a party fails to serve and file pleadings as required under this rule, and has not obtained an order extending time to serve its pleadings, the court may issue an order to show cause why sanctions shall not be imposed.

**JURY FEES:** In order to preserve the right to a jury trial, one party for each side demanding a jury trial shall pay an advance jury fee in the amount of one hundred fifty dollars ($150) on or before the date scheduled for the initial case management conference in the action.

**COURT REPORTERS:** Official Court Reporters are not normally available in civil matters, but may be requested in certain situations no later than 10 days before the hearing date.  See SDSC Local Rules, rule 1.2.3 and Policy Regarding Normal Availability and Unavailability of Official Court Reporters (SDSC Form #ADM-317) for further information.

**ALTERNATIVE DISPUTE RESOLUTION (ADR):** The court discourages any unnecessary delay in civil actions; therefore, continuances are discouraged and timely resolution of all actions, including submitting to any form of ADR is encouraged.  The court encourages and expects the parties to consider using ADR options prior to the CMC.  The use of ADR will be discussed at the CMC.  Prior to the CMC, parties stipulating to the ADR process may file the Stipulation to Use Alternative Dispute Resolution (SDSC Form #CIV-359).

## NOTICE OF E-FILING REQUIREMENTS
## AND IMAGED DOCUMENTS

Effective April 15, 2021, e-filing is required for attorneys in represented cases in all limited and unlimited civil cases, pursuant to the San Diego Superior Court General Order: In Re Procedures Regarding Electronically Imaged Court Records, Electronic Filing and Access to Electronic Court Records in Civil and Probate Cases.  Additionally, you are encouraged to review CIV-409 for a listing of documents that are not eligible for e-filing.  E-filing is also encouraged, but not mandated, for self-represented litigants, unless otherwise ordered by the court.  All e-filers are required to comply with the e-filing requirements set forth in Electronic Filing Requirements (Civil) (SDSC Form #CIV-409) and Cal. Rules of Court, rules 2.250-2.261.

All Civil cases are assigned to departments that are part of the court's "Imaging Program."  This means that original documents filed with the court will be imaged, held for 30 days, and then destroyed, with the exception of those original documents the court is statutorily required to maintain.  The electronic copy of the filed document(s) will be the official court record, pursuant to Government Code § 68150. Thus, original documents should not be attached to pleadings filed with the San Diego Superior Court, unless it is a document for which the law requires an original be filed.  Any original documents necessary for a motion hearing or trial shall be lodged in advance of the hearing pursuant to California Rules of Court, rule 3.1302(b).

It is the duty of each plaintiff, cross-complainant, or petitioner to serve a copy of this Notice of Case Assignment and Case Management Conference (Civil) (SDSC Form #CIV-721) with the complaint, cross-complaint, or petition on all parties to the action.

On all pleadings filed after the initial case originating filing, all parties must, to the extent it is feasible to do so, place the words "IMAGED FILE" in all caps immediately under the title of the pleading on all subsequent pleadings filed in the action.

The official court file will be electronic and accessible at one of the kiosks located in the Civil Business Office and may be found on the court's website at www.sdcourt.ca.gov.

# EXHIBIT F

Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
Christopher E. Stiner (SBN 276033)
cstiner@ahdootwolfson.com
Deborah DeVilla (SBN 312564)
ddevilla@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
2600 W. Olive Ave., Suite 500
Burbank, CA  91505
Telephone: (310) 474-9111
Facsimile:  (310) 474-8585

John J. Nelson (SBN 317598)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
401 W Broadway, Suite 1760
San Diego, CA 92101
Tel.:    (858) 209-6941
jnelson@milberg.com

[Additional counsel on signature page]

*Attorneys for Plaintiffs and the Putative Class*

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**12/07/2022** at 08:52:00 AM
Clerk of the Superior Court
By Regina Chanez,Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN DIEGO

| | |
|---|---|
| LINDA CAMUS and DEANNA FRANKLIN-PITTMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SHARP HEALTHCARE,<br><br>Defendant. | Case No. 37-2022-00048546-CU-NP-CTL<br><br>**NOTICE OF APPEARANCE OF JOHN J. NELSON**<br><br><br><br>Judge: Hon. Richard S. Whitney<br>Dept:  C-68 |

TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that John J. Nelson of Milberg Coleman Bryson Phillips Grossman, PLLC, hereby appears as an additional attorney of record for Plaintiffs, Linda Camus and Deanna Franklin-Pittman. His contact information is:

> John J. Nelson, Esq.
> **MILBERG COLEMAN BRYSON**
> **PHILLIPS GROSSMAN, PLLC**
> 401 W Broadway, Suite 1760
> San Diego, CA 92101
> Tel.:    (858) 209-6941
> jnelson@milberg.com

Dated: December 7, 2022

Respectfully submitted,

John J. Nelson
**MILBERG COLEMAN BRYSON PHILLIPS**
**GROSSMAN, PLLC**
401 W Broadway, Suite 1760
San Diego, CA 92101
Tel.:    (858) 209-6941
jnelson@milberg.com

Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
Christopher E. Stiner (SBN 276033)
cstiner@ahdootwolfson.com
Deborah DeVilla (SBN 312564)
ddevilla@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
2600 W. Olive Ave., Suite 500
Burbank, CA  91505
Telephone: (310) 474-9111
Facsimile:  (310) 474-8585

*Attorneys for Plaintiffs and the Putative Class*

1

Notice of Appearance

**PROOF OF SERVICE**

1

2    I, the undersigned, declare that I am employed in the County of Bristol, Commonwealth
of Massachusetts. I am over eighteen (18) years of age and not a party to the above-entitled
3    action.

4    On December 7, 2022, I served the following document(s):

5    **NOTICE OF APPEARANCE OF JOHN J. NELSON**

6
on the interested party identified below via electronic mail to the interested party identified
7    below:

8        Tina Wolfson (SBN 174806)
9        twolfson@ahdootwolfson.com
         Christopher E. Stiner (SBN 276033)
10       cstiner@ahdootwolfson.com
         Deborah DeVilla (SBN 312564)
11       ddevilla@ahdootwolfson.com
         **AHDOOT & WOLFSON, PC**
12       2600 W. Olive Ave., Suite 500
         Burbank, CA  91505
13       Telephone: (310) 474-9111
         Facsimile:  (310) 474-8585
14
15       *Counsel for Plaintiffs Linda Camus and Deanna Franklin-Pittman*

16       I declare under penalty of perjury that the foregoing is true and correct, executed this 7th

17   day of December, 2022.

18

19                                              *Sandra Martin*

20                                          Sandra A. Martin

21

22

23

24

25

26

27

28

2

Notice of Appearance

# EXHIBIT G

| Attorney or Party without Attorney:<br>Tina Wolfson (SBN 174806)<br>AHDOOT & WOLFSON, PC<br>2600 W Olive Avenue Suite 500<br>Burbank, CA 91505<br>  Telephone No: 818-474-9111<br><br>  Attorney For:   Plaintiff | For Court Use Only<br><br>**ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of San Diego<br><br>**12/14/2022** at 10:02:00 AM<br>Clerk of the Superior Court<br>By E- Filing, Deputy Clerk |
|---|---|

| *Ref. No. or File No.:*<br>Sharp Memorial Hospital | |

*Insert name of Court, and Judicial District and Branch Court:*
Superior Court of the State of California in and for the County of San Diego

*Plaintiff:*   LINDA CAMUS and DEANNA FRANKLINPITTMAN, on behalf of themselves
            and all others similarly situated
*Defendant:*   SHARP HEALTHCARE

| **PROOF OF SERVICE<br>SUMMONS** | *Hearing Date:* | *Time:* | *Dept/Div:* | *Case Number:*<br>37-2022-00048546-CU-NP-CTL |
|---|---|---|---|---|

1.  *At the time of service I was at least 18 years of age and not a party to this action.*

2.  I served copies of the Summons, Class Action Complaint; Civil Case Cover Sheet; Notice of Case Assignment and Case Management Conference (Civil); Alternative Dispute Resolution (ADR) Information; Stipulation To Use Alternative Dispute Resolution (ADR)

3.  *a.*  *Party served:*   SHARP HEALTHCARE
    *b.*  *Person served:*   Rick Grossman, registered Agent

4.  *Address where the party was served:*   8695 Spectrum Center Blvd, San Diego, CA 92123

5.  *I served the party:*
    b. **by substituted service.**   On: Wed, Dec 07 2022 at: 10:37 AM I left the documents listed in item 2 with or in the presence of: Jenna Haynes, Legal secretary

    (1)  [X]  **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.
    (2)  [ ]  **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.
    (3)  [ ]  **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.
    (4)  [X]  **(Declaration of Mailing)** is attached.
    (5)  [ ]  **(Declaration of Diligence)** attached stating actions taken first to attempt personal service.

6.  The "Notice to the Person Served" (on the summons) was completed as follows:
    a.  [ ]  as an individual defendant.
    b.  [ ]  as the person sued under the fictitious name of *(specify)*:
    c.  [ ]  as occupant.
    d.  [X]  On behalf of *(specify)*:   SHARP HEALTHCARE
         under the following Code of Civil Procedure section:

| | |
|---|---|
| [ ]  416.10 (corporation) | [ ]  415.95 (business organization, form unknown) |
| [ ]  416.20 (defunct corporation) | [ ]  416.60 (minor) |
| [ ]  416.30 (joint stock company/association) | [ ]  416.70 (ward or conservatee) |
| [ ]  416.40 (association or partnership) | [ ]  416.90 (authorized person) |
| [X]  416.50 (public entity) | [ ]  415.46 (occupant) |
| [ ]  other: | |



Judicial Council Form POS-010
Rule 2.150.(a)&(b) Rev January 1, 2007

**PROOF OF SERVICE
SUMMONS**

*8052528
(5167382)*
Page 1 of 2

**EXHIBIT G
PAGE 54**

| Attorney or Party without Attorney:<br>Tina Wolfson (SBN 174806)<br>AHDOOT & WOLFSON, PC<br>2600 W Olive Avenue Suite 500<br>Burbank, CA 91505<br>  Telephone No: 818-474-9111<br><br>  Attorney For:   Plaintiff | For Court Use Only |
|---|---|
| | *Ref. No. or File No.:*<br>Sharp Memorial Hospital |

| Insert name of Court, and Judicial District and Branch Court:<br>Superior Court of the State of California in and for the County of San Diego |
|---|

| *Plaintiff:*   LINDA CAMUS and DEANNA FRANKLINPITTMAN, on behalf of themselves<br>                  and all others similarly situated<br>*Defendant:*   SHARP HEALTHCARE |
|---|

| **PROOF OF SERVICE**<br>**SUMMONS** | *Hearing Date:* | *Time:* | *Dept/Div:* | *Case Number:*<br>37-2022-00048546-CU-NP-CTL |
|---|---|---|---|---|

Recoverable cost Per CCP 1033.5(a)(4)(B)

7.  **Person who served papers**
    a.  Name:       Mark Brown
    b.  Address:    **FIRST LEGAL**
                   1517 W. Beverly Blvd.
                   LOS ANGELES, CA 90026
    c.  Telephone number:    (213) 250-1111
    d.  **The fee** for service was:    $143.40
    e.  I am:
        (1)  [ ]  not a registered California process server.
        (2)  [ ]  exempt from registration under Business and Professions Code section 22350(b).
        (3)  [X]  a registered California process server:
            (i)    [ ] owner  [ ] employee  [X] independent contractor
            (ii)  Registration No:   1865
            (iii)  County:   San Diego

8.  *I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

                       12/07/2022                                 
                           *(Date)*                                      Mark Brown

 Judicial Council Form POS-010<br>Rule 2.150.(a)&(b) Rev January 1, 2007       **PROOF OF SERVICE**<br>**SUMMONS**       *8052528*<br>*(5167382)*<br>Page 2 of 2

**EXHIBIT G**<br>**PAGE 55**

| Attorney or Party without Attorney: <br> Tina Wolfson (SBN 174806) <br> AHDOOT & WOLFSON, PC <br> 2600 W Olive Avenue Suite 500 <br> Burbank, CA 91505 <br>   Telephone No: 818-474-9111 <br><br>   Attorney For: Plaintiff | For Court Use Only |
|---|---|

| | *Ref. No. or File No.:* <br> Sharp Memorial Hospital |
|---|---|

*Insert name of Court, and Judicial District and Branch Court:*
Superior Court of the State of California in and for the County of San Diego

*Plaintiff:*   LINDA CAMUS and DEANNA FRANKLINPITTMAN, on behalf of themselves and all others similarly situated
*Defendant:*   SHARP HEALTHCARE

| **PROOF OF SERVICE** <br> **By Mail** | Hearing Date: | Time: | Dept/Div: | Case Number: <br> 37-2022-00048546-CU-NP-CTL |
|---|---|---|---|---|

1.  *I am over the age of 18 and not a party to this action. I am employed in the county where the mailing occurred.*

2.  I served copies of the Summons, Class Action Complaint; Civil Case Cover Sheet; Notice of Case Assignment and Case Management Conference (Civil); Alternative Dispute Resolution (ADR) Information; Stipulation To Use Alternative Dispute Resolution (ADR)

3.  By placing a true copy of each document in the United States mail, in a sealed envelope by **First Class** mail with postage prepaid as follows:
   a. Date of Mailing: Wed, Dec 7, 2022
   b. Place of Mailing: LOS ANGELES, CA 90026
   c. Addressed as follows: SHARP HEALTHCARE
               8695 Spectrum Center Blvd, San Diego, CA 92123

4.  *I am readily familiar with the business practice for collection and processing of correspondence as deposited with the U.S. Postal Service on Wed, Dec 7, 2022 in the ordinary course of business.*

Recoverable cost Per CCP 1033.5(a)(4)(B)

5. *Person Serving:*
  a. THOMAS TILCOCK
  **b. FIRST LEGAL**
   1517 W. Beverly Boulevard
   LOS ANGELES, CA 90026
  c. (213) 250-1111

      **d.** *The Fee* for Service was:
      **e.** I am: Not a Registered California Process Server

6.  *I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

       12/07/2022

         *(Date)*                 Thomas Tilcock



Judicial Council Form        **PROOF OF SERVICE**          *8052528*
Rule 2.150.(a)&(b) Rev January 1, 2007    **BY MAIL**             *(5167382)*

**PROOF OF SERVICE**

I, Nancy L. Brazil, declare:

I am employed in Los Angeles County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 11601 Wilshire Boulevard, Suite 1400, Los Angeles, CA 90025-0509. On January 6, 2023, I served a copy of the within document(s):

**DEFENDANT'S NOTICE OF REMOVAL**

☑ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.

☑ by transmitting via electronic mail the document(s) listed above to the e-mail address(es) set forth below on this date and the transmission was reported as complete and without error.

| | |
|---|---|
| Tina Wolfson | *Attorneys for Plaintiff* |
| Robert Ahdoot | LINDA CAMUS AND DEANNA |
| Christopher E. Stiner | FRANKLIN-PITTMAN, on |
| **AHDOOT & WOLFSON, PC** | behalf of themselves and all others |
| 2600 W. Olive Avenue, Suite 500 | similarly situated |
| Burbank, CA 91505 | |
| Telephone: (310) 474-9111 | |
| Facsimile: (310) 474-8585 | |
| Emails: twolfson@ahdootwolfson.com | |
| rahdoot@ahdootwolfson.com | |
| stiner@ahdootwolfson.com | |

John J. Nelson
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive
Beverly Hills, CA 90212
Telephone: (858) 209-6941
Email: jnelson@milberg.com

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

57

1       I declare under penalty of perjury under the laws of the United States of
2   America that the above is true and correct.

3       Executed on January 6, 2023, at Los Angeles, California.

4

5                                          Nancy L. Brazil

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT'S NOTICE OF REMOVAL